UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMI Corporation, | ) | CASE NO. 1:15 CV 1257 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Joseph A. Opal, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Joseph A. Opal's Motion to Enforce Settlement Agreement and for Fees (Doc. 20). This case involves the misappropriation of trade secrets. For the reasons that follow, the motion to enforce is GRANTED and the motion for fees is DENIED.

**ANALYSIS**

The facts relevant to this motion are undisputed. The Court held a settlement conference on February 11, 2016. At the conference, the parties discussed two possible resolutions of this matter. The Court held a follow up telephonic status conference on February 29, 2016. At that conference, counsel for defendant informed plaintiff and the Court that defendant had been

1

offered a job selling "robotics." Ultimately, defendant disclosed that plaintiff's prospective employment was with Absolute Robot, Inc. ("ARI").

Later that day, plaintiff sent defendant the following letter:

During our settlement conference with [the Court] this morning, you advised that [defendant] was willing to settle the referenced litigation with the express agreement that for three years from the date of the settlement, he cannot work directly or indirectly[1] for a company that competes with [plaintiff] in the sales of end-of-arm tooling ("EOAT") and/or conveyor systems....

The letter further informed defendant that plaintiff had researched ARI and discovered that ARI sells EOAT with its robots. The letter went on to note that "this information is very concerning to [plaintiff]. [Defendant's] veracity has proven to be suspect throughout this case. Based on the information available, [plaintiff] is unwilling to agree to a settlement knowing that [defendant] will be going to work for ARI" which shares office space with an entity that engages "in the sale of FIPA's EOAT products."

Defendant responded by letter indicating that his employment with ARI does not involve EOAT or conveyor systems. The letter further generally assures that defendant will not be involved with the entity sharing office space with ARI and that defendant will not be reporting to that location.

The following email exchange took place the next day:

Matt:

If [defendant] is employed by ARI, [plaintiff] cannot agree to a settlement of the case under the terms discussed.

---

[1] Although not dispositive, the parties' settlement discussions with the Court focused on the fact that defendant could not contact plaintiff's *clients* either "directly or indirectly."

First, your disclosure of [defendant's] employment with ARI failed to mention that he would be working in the location from which EPM Sales operates.... Finally, your letter has very carefully avoided stating precisely what [defendant] will be required to sell if employed by ARI.  There is no affirmative statement that [defendant] would be employed by ARI full-time exclusively selling ARI robots.

We need to contact [the Court] today and advise [it] that [plaintiff] is unwilling to settle this matter under the term discussed if [plaintiff] insists on his proposed employment with ARI...

Defense counsel then responded, "...as I thought I made clear, [defendant] will not be working from the location from which EPM Sales operates.  The following exchange ensued:

Matt:

This still does not address our concerns, especially affirmative statements as to what he will de doing with ARI....

John


John, I have provided you with the relevant information, and you will do with it as you please.  I'm happy to set up a call with the judge, or however you'd like to proceed.


Matt:

So you are going to refuse to tell me precisely what [defendant] is going to be doing for ARI.  Is that because you have not asked, do not know, or are unwilling to detail.  This underscores [plaintiff's] concern and lack of trust.

John



John, I think I've told you everything you've asked (and more).  If you have questions, please let me know.

3

Matt:

You have not identified precisely what [defendant] is going to be doing at ARI.  Is he going to be exclusively selling robots full-time for ARI and will not be involved in selling any other products?  Simple question which has not been directly answered.

John

Matt:

I assume you will not be providing a response to this very simple, direct question.  If I do not receive and [sic] answer by 4:30 PM Eastern time, then I will contact [the Court's] courtroom deputy and advise her that we do not have a settlement and that counsel for the parties need to speak with the judge.

John

John, forgive me for being out-of-pocket for a couple hours. [Defendant] is being hired to devote his full-time attention to selling robots exclusively for ARI.  I thought that had already been made clear.

Matt:

Thank you for finally answering the question.  I will draft the settlement agreement. Hope [defendant] has been honest with you.

John

Based on these communications, defendant quit his current employment and accepted

4

employment with ARI.  Two days later, plaintiff's counsel sent an email indicating that "defendant's potential employment with ARI would be in direct conflict with the main term and very spirit of the settlement. [Defendant] would be working for a company, ARI, that competes against [plaintiff] in EOAT sales."  The email goes on to state that "we do not have a settlement if [defendant] insists on taking a position with ARI as proposed."

The following morning, the Court held a telephonic conference call in which the parties discussed defendant's employment with ARI.  The Court discussed with the parties clarifying the settlement agreement to ensure that defendant could not work in any capacity in EOAT sales.  The Court noted that it would retain jurisdiction over the settlement.  Twenty minutes later, plaintiff's counsel called defense counsel and informed him that plaintiff "is unwilling to settle this matter should [defendant] work for ARI."

Defendant now moves to enforce the settlement agreement and plaintiff opposes the motion.

Defendant argues that the parties reached an agreement with respect to the material terms of the settlement.  According to defendant, the parties agreed to discontinue the litigation provided defendant resigned his employment with FIPA, and promised not to compete with [plaintiff] in the sale of either EOAT or conveyor systems for a period of three years.  Defendant points to the string of emails in support of its position.  According to defendant, the emails make clear that plaintiff's concern centered on what precisely defendant would be selling for ARI.  In response, plaintiff argues that the parties never agreed to the essential terms of the settlement.  According to plaintiff, it understood the primary term of the agreement to prevent defendant from working for any company that competes in the EOAT market regardless of the tasks

5

actually performed by defendant. Plaintiff claims that defendant understood the term to mean that defendant could work for a competitor, provided he did not sell EOAT or conveyor systems. As such, there was no meeting on the minds and, therefore, no enforceable settlement agreement.

> Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms. Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed. However, no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present. Thus, summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement.

*Michigan Reg'l Council of Carpenters v. New Century Bancorp*, 99 Fed App'x 15, 20 (6th Cir.2004)(citations and quotations omitted). As plaintiff itself notes, "the Sixth Circuit has repeatedly held that a federal court may enforce agreements entered into in settlement of litigation pending before them, even if that agreement has not been reduced to writing...." *Brockwell v. Beachwood City School Dist.*, 2008 WL 918266 at *6 (N.D. Ohio March 31, 2008).

As an initial matter, the Court finds that an evidentiary hearing is not necessary in that the parties do not dispute the relevant facts. Nor did any party request a hearing.

Upon review, the Court finds that the parties reached an enforceable settlement agreement pursuant to which defendant must resign his employment with FIPA, and is prohibited from competing with [plaintiff] in the sale of either EOAT or conveyor systems for a period of three years. The Court finds that the email exchange between counsel for plaintiff and defendant clearly and unambiguously conveys that the parties agreed to this term. Plaintiff now argues that it understood the term to mean that defendant could not work for any entity that competes with plaintiff in the EOAT business. This interpretation is directly contradicted by the contents of the parties' correspondence and the discussions that took place at the settlement conference. On February 29, 2016, counsel for plaintiff acknowledged that it knew that "ARI

6

sells EOAT with its robots." The correspondence focused on confirming the nature of defendant's duties if he were to accept employment with ARI.  Obviously, however, this would be entirely irrelevant if the parties' agreement prevented defendant from accepting employment with any EOAT competitor regardless of the nature of defendant's job duties.  Because plaintiff knew that ARI sold EOAT with its robots, any employment would be prohibited.  Yet, upon learning that defendant's job duties would be limited to selling robots for ARI, plaintiff responded, "Thank you for finally answering the question.  I will draft the settlement agreement."  Based on this correspondence, the Court finds that the parties reached a settlement on the essential terms of the agreement.  The parties agreed that defendant would resign his employment with FIPA and would not compete with plaintiff in EOAT or conveyor systems businesses for a period of three years.  This is entirely consistent with this Court's notes and recollection of the events that transpired during various court proceedings.  Moreover, in direct reliance on these representations, defendant quit his employment with FIPA and accepted a position with ARI.

The Court concludes, however, that sanctions are not warranted.

**CONCLUSION**

For the foregoing reasons, Joseph A. Opal's Motion to Enforce Settlement Agreement and for Fees (Doc. 20) is GRANTED in PART and DENIED in PART.  The motion to enforce is GRANTED and the motion for fees is DENIED.

IT IS SO ORDERED.

                                        /s/ Patricia A. Gaughan  
                                       PATRICIA A. GAUGHAN  
                                       United States District Judge

Dated: 3/10/16